**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**MAXINE REMIAS,**

      **Plaintiff,**

                               **Civil Action 2:15-cv-2689**
    **v.**                           **Judge James L. Graham**
                               **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Maxine Remias, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits and supplemental security income.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 14), the Commissioner's Memorandum in Opposition (ECF No. 23), Plaintiff's Reply (ECF No. 24), and the administrative record (ECF Nos. 8 and 11).  For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### I.      BACKGROUND

Plaintiff protectively filed her applications for benefits on May 21, 2010, alleging that she has been disabled since May 21, 2010, due to depression, Post Traumatic Stress Disorder ("PTSD"), anxiety disorder, agoraphobia, diabetes, high blood pressure, and high cholesterol.

(R. at 39, 194-95, 196-201.)  Plaintiff's applications were denied initially and upon

reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.

Administrative Law Judge Timothy G. Keller ("ALJ") held a video hearing on June 28, 2012, at

which Plaintiff, represented by counsel, appeared and testified.  (R. at 625-36.)  Bruce Walsh, a

vocational expert, also appeared and testified at the hearing.  (R. at 636–41.)  On July 18, 2012,

the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social

Security Act.  (R. at 93-108.)  On October 9, 2013, the Appeals Council vacated the July 2012

decision and remanded the case for further proceeding.  (R. at 113-17.)  A subsequent hearing

was held on February 20, 2014, at which Plaintiff, represented by counsel, appeared and

testified.  (R. at 33-37.)  On February 28, 2014, the ALJ issued a decision finding that Plaintiff

was not disabled within the meaning of the Social Security Act.  (R. at 11-24.)  On June 13,

2015, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision

as the Commissioner's final decision.  (R. at 1-5.)  Plaintiff then timely commenced the instant

action.

## II.    HEARING TESTIMONY

### A.    Plaintiff's Testimony

Plaintiff testified at the June 28, 2012 administrative hearing that she last worked in May

2010.  (R. at 626.)  She said that she stopped working because she was missing work due to her

panic attacks.  She indicated that her primary care physician, Dr. Cowan, "signed [her] off

work."  (R. at 627.)  Plaintiff stated that once she has a panic attack in a certain location, when

she returns to that place, she is on guard so the panic attack will not reoccur.  (*Id.*)  She testified

that her startle reflex is broken such that she cannot calm down in a reasonable time.  (R. at 628.)

She testified that her panic attacks could affect her for as little as a day or prevent her from doing anything for up to a week. (R. at 630.) Plaintiff also testified that after a panic attack, she has to take Ativan, which sedates her and incapacitates her from caring for herself. She said that when she is not suffering from the effects of her panic attack, she can function. (R. at 631.)

Plaintiff testified that if she drives by herself, she is not always able to focus on what is going on around her and that she might need to call someone to pick her up if she panics. (R. at 633.) She indicated that she was medicated at the hearing and reported that she had a panic attack in the hallway with a security guard prior to the hearing. (R. at 634.) She said that she has missed church due to panic attacks. (R. at 634-35.)

Plaintiff indicated that she was serving as a "foster grandma" at the childcare facility at her church. (R. at 635.) She explained that in that role, she can stay for any length of time and could call and cancel if she had a panic attack. As a "foster grandma," Plaintiff holds babies and reads stories to preschool-aged children. (*Id*.)

In a subsequent, February 20, 2014 administrative hearing, Plaintiff testified that after her husband passed away, she stopped volunteering at her church's daycare. (R. at 33-34.) When asked about a note reflecting that Plaintiff was babysitting, she stated that she goes to her grandchildren's home and plays with them, but that her daughter-in-law is there. (R. at 33.)

Plaintiff testified that since a 2003 robbery, she experiences monthly panic attacks that are "completely debilitating where [she cannot] go out . . . for about a week." (R. at 35.) She indicated that these panic attacks prevent her from going out or composing herself well enough to work. (R. at 35.) She testified she no longer drove because she cannot deal with any kind of pressure. (R. at 36.) At the time of this hearing, she was taking Zoloft and Abilify, as well

Ativan when she has a panic attack.  She indicated that the medications helped to decrease the frequency and the intensity of her panic attacks, but that she still experiences them.  She explained that her panic attacks deceased from two to three times a month down to one with the medications.  (R. at 37.)

**B.**     **Vocational Expert Testimony**

The VE testified that Plaintiff's past jobs included a cashier, a fast food manager, a file clerk in a law office, and a vocational training instructor.  (R. at 637.)  The ALJ proposed a series of hypotheticals regarding an individual with Plaintiff's age, education, and work experience and the residual functional capacity ("RFC") he ultimately assessed.  (R. at 638.) The VE testified that such an individual could not perform Plaintiff's past work, but could perform approximately 13,000 light exertion, unskilled jobs in the state economy, such as a mail clerk, cleaner, or a marker.  (*Id.*)      The VE further testified that if Plaintiff was unavailable for an entire week every month due to the residual effects of an anxiety attack, it would preclude all competitive employment.  (R. 638-39.)  When examined by Plaintiff's counsel, the VE testified that being off task 25% to 50% of the work day would preclude competitive employment.  (R. at 639-41.)

### III.    MEDICAL RECORDS

**A.**     **Larry Cowan, D.O.**

Plaintiff began treating with Dr. Cowan, a primary care physician, in June 2003.  (R. at 307, 458.)  On June 30, 2010,  Dr. Cowan listed Plaintiff's diagnoses as anxiety disorder, a panic disorder, and depression.  He reported that Plaintiff's first experienced symptoms after she was exposed to an armed robbery in August 2003.  She had, however, been treated for depression

prior to this 2003 incident.  At this time, Plaintiff was taking the medication Effexor.  Dr. Cowan also noted that Plaintiff's condition was not well controlled.  Dr. Cowan opined that Plaintiff was "unable to perform work in any environment that may be stressful at all.  She is able to walk, stand, bend, etc. . . . Certainly is unable to work in former position as a cashier."  (R. at 308.)

In November 2010, Dr. Cowan reported that he had last seen Plaintiff on November 4, 2010, and opined that she is totally disabled due to concentration problems.  (R. at 442.)

On September 20, 2011, Dr. Cowan completed a mental residual functional capacity assessment in which he found that Plaintiff was markedly impaired in her abilities to perform at expected production levels, behave predictably and reliably, and tolerate customary work pressures.  (R. at 455-57.)  Dr. Cowan also found that Plaintiff has moderate impairments including relating to coworkers, supervisors, and the general public; carrying out instructions, and maintaining attention and concentration.  (*Id.*)  The form Dr. Cowan completed defined "mild" as "unable to function in this area less than 10% of the work day or work week; "moderate" as "unable to function in this area from 26% to 50% of the work day or work week" and "marked" as unable to function in this area over 50% of the work day or work week.  (R. at 455.)  Dr. Cowan concluded that Plaintiff had "made every effort" to work in the past with a variety of medications, but that "she simply cannot maintain her composure in a work environment."  (R. at 457.)

On October 21, 2011, Dr. Cowan prepared a narrative in which he reported that Plaintiff began treating with him in 2003 after being held at gunpoint during a robbery at a Wendy's fast food restaurant where she worked.  Dr. Cowan indicated that this incident led to an anxiety disorder, which he characterized as PTSD.  Dr. Cowan reported that since that time, Plaintiff has

been on a variety of psychotropic medications and has been evaluated by psychiatric services. Dr. Cowan opined that Plaintiff is disabled due to this diagnoses. He described Plaintiff's prognosis is guarded and opined that her condition tends to be permanent and that although it could taper off over the course of years, it has not done so after eight years. (R. at 458.) He concluded that it was his "impression that [Plaintiff] was indeed disabled from working in almost any kind of situation that involves working with the public and/or any position requiring significant cognitive abilities." (*Id*.)

**B.    Shelby Raiser, D.O.**

Dr. Raiser, who works in the same practice as Dr. Cowan, began treating Plaintiff in December 2012. (*See* R. at 594.).

In October 2013, Plaintiff reported that she had been okay, but with low energy. Dr. Raiser noted that Plaintiff seemed "to be ok on medicines." (R. at 569.) Dr. Raiser reported normal mental status examination findings. (R. at 571.) She diagnosed major depressive affective disorder, single episode, moderate degree; anxiety state unspecified; other malaise and fatigue; and long-term (current) use of medications. (*Id.*)

When seen on December 18, 2013, Dr. Raiser noted that Plaintiff "is complaining that she is still depressed." (R. at 565.) Plaintiff reported feeling down more than happy and that her sleep was fragmented such that she was waking not well rested. She also indicated that she felt generalized anxiety, but that she feels safe. (*Id.*) Plaintiff asked to try a new medication. Dr. Raiser documented normal mental status examination findings. She discontinued Plaintiff's Effexor and added Prisitque. (R. at 568.)

6

In a January 14, 2014 letter, Dr. Raiser reported that Plaintiff's diagnoses included a major depressive disorder, recurrent; and PTSD with severe anxiety with frequent anxiety attacks.  Dr. Raiser noted that Plaintiff's anxiety attacks were so severe that any change in routine, loud noise, or criticism may trigger such an attack to occur.  Dr. Raiser stated as follows:

> In regards to her social interaction she has extreme impairment of ability to accept instruction from or respond appropriately to criticism from superiors, she is impaired extreme in her ability to work in coordination with or in proximity to others without distracting them or exhibiting behavioral extremes she is extremely impaired with the ability to respond appropriately to co-workers.  She is extremely impaired relating to the general public. She prefers to stay home.  Her anxiety is so severe that she has extreme impairment to remember locations, workday procedures.  She often gets lost while driving.  She will pull off at an early exit and not know where she is. She is able to make decisions such as not driving when she is not able to concentrate.

(R. at 612.)  Dr. Raiser also stated that Plaintiff has difficulties with her activities of daily living and noted that she had reported only showering a couple times of week and having difficulty focusing to do laundry and dishes.  (R. at 613.)  Dr. Raiser concluded that Plaintiff "has shown a decline in her mental health and is disabled," adding that she believed her to be permanently disabled.  (*Id.*)

## C.    Mound Builders

Plaintiff saw Lois Prusinowski, PMHCNS-BC, for psychiatric medical management in May 2010.  (R. at 437.)  Ms. Prusinowski noted that Plaintiff had been crying, and she began Plaintiff on a trial of Cymbalta.  (R. at 437.)

In June 2010, Ms. Prusinowski reported normal mental status examination findings and described Plaintiff's mood as euthymic, calm, and cooperative and her affect as restricted.  (R. at 435-36.)  In July 2010, Ms. Prusinowski noted normal findings upon mental status examination with the exception of Plaintiff's mood, which she described as "mildly irritable, anxious, and

depressed." (R. at 423.) In August 2010, Plaintiff reported that she was doing "somewhat better," but that she had recently had a panic attack. (R. at 426.) She also indicated that her application for Social Security Disability was still pending. Ms. Prusinowski noted normal findings upon mental status examination with Plaintiff exhibiting "[b]righter affect," but "[s]till somewhat anxious." (*Id*.) Plaintiff indicated that she was not experiencing any side effects from her medications.

In September 2010, Plaintiff reported that she had not experienced any recent panic attacks, but she continued to complain of sad, depressed mood without suicidal ideation and that she was sleeping about 10 hours a day. (R. at 429.) Plaintiff also reported that her application of Social Security benefits had been denied and that she was going to appeal the decision. Ms. Prusinowski again reported normal mental status examination findings with the exception of Plaintiff's display of a "mildly dysporic and anxious [mood] with flat affect." (*Id*.)

In October 2010, Plaintiff reported that she was "finding more and more excuses to avoid going out" and that she was sleeping excessively. (R. at 432.) She said that she had fewer panic attacks but continued to experience generalized anxiety. Upon performing a mental status examination, Ms. Prusinowski observed that Plaintiff displayed an "anxious, dysphoric [mood] with flat affect." (*Id*.) Her other mental status examination findings were normal. In November 2010, Ms. Prusinowski described Plaintiff's mood as "discouraged" and "dysphoric" with a flat affect, but otherwise reported normal mental status examination findings. (R. at 518.) Plaintiff reported no side effects from her medications. (*Id*.)

Ms. Prusinowski continued to see Plaintiff for medication management throughout 2011. Plaintiff reported getting in disagreements with her family and having to kick her son and

8

daughter-in-law out of the house for not paying bills that caused her to feel depressed and tearful.  (R. at 502, 506, 514.)

Plaintiff began seeing social worker Dennis Bowers, LISW, in June 2011 for both group and individual sessions.  (R. at 461, 465-89.)  Mr. Bowers treatment notes primarily document Plaintiff's self-reported family stressors and symptoms.  (*Id.*)

In December 2011, Mr. Bowers prepared a narrative at Plaintiff's counsel's request in which he diagnosed Plaintiff with major depressive disorder, recurrent; and PTSD with severe anxiety.  Mr. Bowers reported that Plaintiff becomes startled by loud noises, perceived criticism, and changes in her routine.  Mr. Bowers indicated that Plaintiff had shown some lessening of anxiety symptoms, but that the severity of her symptoms still prevent her from working.  He concluded that "It is highly unlikely that [Plaintiff] could maintain adequate attendance to keep a job because of her extreme anxiety," adding that "[i]n similar cases it is my experience that she will need to continue in treatment for at least two years before we see any significant improvement."  (R. at 461.)

Mr. Bowers also filled out a form reflecting his opinion that Plaintiff  exhibited several moderate, marked, and extreme limitations in a variety of work related areas of mental functioning.  (R. at 462-64.)  The form defined "mild" as "unable to function in this area less than 10% of the work day or work week; "moderate" as "unable to function in this area from 26% to 50% of the work day or work week" and "marked" as unable to function in this area over 50% of the work day or work week.  (R. at 462.)  Mr. Bowers indicated that Plaintiff's condition was likely to deteriorate under the stress of a job because she was unable to maintain her

attendance at her job as a cashier.  (R. at 464.)  He also noted that Plaintiff had difficulty driving and with transportation, as well as loud noises.  (*Id*.)

Judyth Box, M.D. took over medication management of Plaintiff from Ms. Prusinowski in January 2012.  (R. at 538-41.)  At that time, Plaintiff reported that her panic attacks were down to one per every six weeks.  (*Id*.).  She was on Ativan and requested to taper Effexor.  Dr. Box noted she had "made major progress in the past two years."  (*Id*.)  Plaintiff reported that she is going to church and will be a foster grandma at church.  (*Id.*)

On August 10, 2012, Plaintiff reported that her husband passed away and that she no longer has his income as a result.  (R. at 560.)  She reported that she thought she might loose her home and dogs and that she was feeling scared and angry.  (*Id*.) When seen by Dr. Box on August 30, 2012, Plaintiff reported that she was babysitting daily, which prevented her from attending group therapy.  (R. at 556.)  She also reported that she gets very depressed some days but she that had good ways to help herself and was reaching out.

In November 2012, Plaintiff reported that she tapered her medication and did fine with 150 mg, but not 75 mg.  (R. at 552.)  She also indicated that she was continuing to taper her Zoloft.  Dr. Box described Plaintiff's affect as "bright for her circumstances," noting that her home was up for sheriff's sale the next month.  (*Id*.)

**D.     Marc Miller, Ph.D.**

Plaintiff was evaluated for disability purposes by Dr. Miller on January 19, 2011.  (R. at 449-53.)  Plaintiff reported that she left her job in May 2010 because her panic attacks were

becoming increasingly worse and that she now has no means of income outside her spouse.  (R. at 449-50.)  She also indicated that she had struggled with depression for seventeen years and panic disorder since 2003.

Dr. Miller noted that Plaintiff displayed a cooperative, friendly behavior with good eye contact and normal psychomotor responses.  He observed that her speech was intelligible and at a normal pace and that her conversation was goal oriented.  (R. at 450.)

Plaintiff reported that she experienced nausea, chest tightness, and tachardia when she is startled, typically by loud noises.  (R. at 451.)  She also reported difficulty in crowds, and an inability to go into a large store without someone, but indicated that she had grocery shopped at Kroger.  Plaintiff also reported difficulty with her memory and agoraphobia.  Dr. Miller observed Plaintiff to be alert and oriented.  Plaintiff reported that she had difficulty with short- and long-term recall and that she had difficulty reading.  She did, however, indicate that she is able to follow one- and two-step directions.  Plaintiff reported experiencing agitation, irritability, and impatience with others.  She described herself as suspicious an mistrustful of others.  On a scale from one to ten, Plaintiff rated her stress level at a six, which she attributed to a lack of income and her panic disorder.  (R. at 452.)  Plaintiff described her motivation as poor, explaining that she has to push herself to accomplish tasks.

Plaintiff stated that she goes to bed at 10:00 p.m. and awakens at 9:00 a.m. and also naps.  She said that she only drives when necessary to the local grocery store.  Her hobbies include knitting.  She reported that she prepares meals and washes dishes, but that her other family members do the cleaning and laundry.

Dr. Miller listed Plaintiff's diagnoses as panic disorder with agoraphobia, generalized anxiety disorder moderate to severe, and dysthymic disorder.  He assigned Plaintiff a GAF score of 55, noting Plaintiff's report that she does not like to leave her home.  (R. at 453.)  He opined that Plaintiff had no impairment in her cognitive ability to understand, remember, and carry out instructions, noting that she appeared to be of good intelligence.  He further opined that her ability to interact with co-workers, supervisors, and the public indicate marked impairment due to her anxiety condition and panic.  He also opined that Plaintiff had moderate impairment in maintaining attention and concentration due to her anxiety condition, and panic.  Finally, Dr. Miller opined that Plaintiff's ability to deal with stress and pressure in a work setting "notes marked impairment, due to her anxiety, impatience, panic disorder, and coping skills."  (R. at 452.)

## E.    State-Agency Evaluations

On July 31, 2010, after review of Plaintiff's medical record, Cynthia Waggoner, Ph.D., a state-agency psychologist, assessed Plaintiff's mental condition and opined that Plaintiff had mild restrictions in her activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation of an extended duration.  (R. at 42.)  She further determined that the evidence did not establish the presence of the "C" criteria.  (*Id.*)  Dr. Waggoner found Plaintiff's allegations to be partially credible, noting that Plaintiff's treatment was most informative in assessing her credibility.  More specifically, Dr. Waggoner noted that Plaintiff's physicians ruled out agoraphobia and also emphasized the mental status examination findings.  (R. at 43.)  Dr. Waggoner assigned "partial weight' to Dr. Cowan's July 2010 opinion, reasoning that the

medical evidence of record "supports stress tolerance problems, but an environment that is not stressful at all is too severe a restriction as elimination of stress is impossible." (R. at 44.)

In assessing Plaintiff's mental RFC, Dr. Waggoner opined that she was moderately limited in her abilities to work in coordination with or in proximity to others with out being distracted by them; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; and to respond appropriately to changes in the work setting. (R. at 44-45.) Dr. Waggoner concluded that Plaintiff "is still capable of performing low stress jobs in a stable environment that involves minimal social interactions and infrequent change" and that she "should not be subject to strict productions quotas or time constraints." (R. at 45.)

On October 21, 2010, Bruce Goldsmith, Ph.D., reviewed the record upon reconsideration and affirmed Dr. Waggoner's opinion. (R. at 63-72.) Dr. Goldsmith noted that Plaintiff "alleged no worsening of conditions or new conditions" and that there were no episodes of decompensation. (R. at 72.)

## IV.  THE ADMINISTRATIVE DECISION

On February 28, 2014, the ALJ issued his decision. (R. at 11-29.) The ALJ concluded that Plaintiff meets the insured status requirements through December 31, 2015. At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially

---

[1]Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five

gainful activity since May 21, 2010, the alleged onset date of disability.  (R. at 17.)  The ALJ

found that Plaintiff had the severe impairments of anxiety-related and affective disorders.  (*Id.*)

He further found that Plaintiff did not have an impairment or combination of impairments that

met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart

P, Appendix 1.  (*Id.*)  At step four of the sequential process, the ALJ set forth Plaintiff's residual

functional capacity as follows:

> After careful consideration of the entire record, the [ALJ] finds that the claimant has
> the residual functional capacity to perform a full range of work at all exertional
> levels but with the following nonexertional limitations:  The claimant is able to
> understand, remember and carry out simple tasks and instructions; maintain
> concentration and attention for two hour segments over an eight-hour work period;
> respond appropriately to supervisors and coworkers in a task-oriented setting where
> contact with others is casual and infrequent; and able to adapt to simple changes and
> avoid hazards in a setting without strict production quotas.

(R. at 19.)  In reaching this determination, the ALJ accorded "great weight" to the opinions of

the state-agency reviewing psychologists, Drs. Waggoner and Goldsmith.  (R. at 20.)  In

addition, the ALJ accepted Dr. Miller's opinions that Plaintiff could fully understand, remember,

and execute routine instructions and had moderate problems maintaining attention, but he

---

questions:

1.   Is the claimant engaged in substantial gainful activity?
2.   Does the claimant suffer from one or more severe impairments?
3.   Do the claimant's severe impairments, alone or in combination, meet or
     equal the criteria of an impairment set forth in the Commissioner's Listing of
     Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.   Considering the claimant's residual functional capacity, can the claimant
     perform his or her past relevant work?
5.   Considering the claimant's age, education, past work experience, and residual
     functional capacity, can the claimant perform other work available in the national
     economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

14

assigned little weight to Dr. Miller's opinion that Plaintiff had marked problems interacting with others and handling workplace stress.  (R. at 19.)  The ALJ also assigned "little weight" to the opinions of Drs. Cowan and Raiser, as well as the opinion of social worker Bowers.  (R. at 19-20.)

Relying on the VE's testimony, the ALJ concluded that even though Plaintiff cannot perform her past relevant work, she can perform jobs that exist in significant numbers in the state economy.  (R. at 22-24.)  He therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R. at 24.)

## V.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.    ANALYSIS

In her Statement of Errors, Plaintiff advances three contentions of error.  More specifically, Plaintiff challenges the ALJ's credibility assessment, his consideration and weighing of the opinions of Drs. Cowan, Raiser, and Miller, and his reliance upon the opinions of the state-agency psychologists.  Plaintiff maintains that this action deserving of an award of benefits under *Faucher v. Sec'y of HHS*, 17 F.3d 171, 176 (6th Cir. 1994).  (ECF No. 14 at 20-21).  The Undersigned addresses Plaintiff's challenge to the ALJ's credibility assessment before turning to her remaining contentions of error.

### A.    Credibility Assessment

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor."  *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v.  Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew,

resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)).  This deference extends to an ALJ's credibility determinations "with respect to [a claimant's] subjective complaints of pain."  *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs*., 823 F.2d 918, 920 (6th Cir.1987)).  Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence."  *Walters*, 127 F.3d at 531.  Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record."  *Rogers*, 486 F.3d at 247 (internal quotation omitted).  An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review.").

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."  *Walters*, 127 F.3d at 531.  In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication.  20 C.F.R. § 404.1529(c)(3); SSR 96–7p, 1996 WL 374186 (July 2, 1996); *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011) (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision) (Report and Recommendation later adopted).  The Sixth Circuit has held that "even if an ALJ's adverse

credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it." *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012)).

Within his credibility analysis, the ALJ noted Plaintiff's allegations of monthly, week-long, debilitating panic attacks and also her allegations of inability to leave the house, tolerate stress, and compose herself in order to work. (R. at 21.) The ALJ also noted her allegations that her medications have decreased the frequency and intensity of her panic attacks from three times a month to once per month. He further considered her diagnoses and reviewed the symptoms Plaintiff endorsed within the course of her treatment. (R. at 21-22) The ALJ concluded that Plaintiff "appears to have underlying medically determinable impairments that could cause some symptomatology," but that the objective medical evidence fails to substantiate the severity of the symptoms and degree of functional limitations she alleges. (R. at 21.)

In assessing Plaintiff's credibility, the ALJ considered and relied upon (1) Plaintiff's medications, routine level of treatment, and the absence of any hospitalizations; (2) Plaintiff's self-reports to treating sources that she was doing okay; (3) the multiple references within the record to Plaintiff grocery shopping, her successful attendance and participation at two hearings, and her activities of daily living; (4) the general lack of objective evidence supporting her subjective complaints; (5) the inconsistency in Plaintiff's statements concerning the frequency of her panic attacks; (6) her emphasis on family issues rather than psychological problems during several of her appointments; (7) her inconsistent statements concerning her babysitting activities; and (8) Plaintiff's ability to testify clearly at one hearing notwithstanding her representation that

18

she had a panic attack just before the hearing, which contradicts her testimony that she is unable to function for up to a week after a panic attack.  (R. at 22.)  In addition, the ALJ relied upon the opinions of Drs. Waggoner and Goldsmith, who had opined that Plaintiff's allegations were only partially credible in light of her treatment history and the mental status examination findings. (R. at 43, 62-72.)

The Undersigned finds that the ALJ's detailed discussion of reasons for his credibility assessment amply supplies substantial evidence supporting his credibility finding.  Contrary to Plaintiff's assertion, the foregoing discussion reflects that the ALJ properly considered the requisite factors in assessing credibility.  For example, the ALJ properly relied upon the record evidence, including objective medical findings.  *See* 20 C.F.R. § 404.1529(c)(2) (objective medical findings are useful in assessing the intensity and persistence of a claimant's symptoms). Consistent with both the ALJ's conclusion and the assessment of the state-agency physicians upon whom the ALJ relied, Plaintiff's treatment records repeatedly reflect normal or only mild findings upon mental status examination.  (*See, e.g.*, R. at 423 (mildly irritable, anxious, and depressed mood, but otherwise normal findings); R. at 426 (bright affect, somewhat anxious, and otherwise normal findings); R. at 429 (mildly dysphoric and anxious mood with otherwise normal findings); R. at 432 (anxious, dysphoric mood with otherwise normal findings); R. at 435-36 (euthymic, calm, and coopoerative mood and otherwise normal findings), R. at 518 (discouraged and dysphoric mood with otherwise normal findings); R. at 552 (describing Plaintiff as "bright for her circumstances," referring to the recent loss of her husband and home); R. at 568 (normal findings), R. at 571 (normal findings).)

19

In addition, it was reasonable for the ALJ to consider and rely upon the level of treatment Plaintiff required and received, which, significantly, Drs. Waggoner and Goldsmith opined undermined Plaintiff's allegations of disabling mental impairments. *See* SSR 96–7p, 1996 WL 374186 (July 2, 1996) (in assessing credibility, the adjudicator must consider, among other factors, "[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" and "[t]reatment, other than medication, the individual receives or has received"); 20 C.F.R. § 404.1529(c)(3) (same); *cf.*, *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) (concluding that ALJ reasonably discounted a doctor's opined limitations where, among other things, the claimant was receiving conservative treatment).

The ALJ also reasonably discounted Plaintiff's allegations based upon the record evidence reflecting her activities of daily living, his observations of her at the hearing, and conflicts between her testimony and other record evidence. *See* 20 C.F.R. § 404.1529(c)(3)(i) (daily activities may be useful to assess nature and severity of claimant's symptoms); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered [the claimant's] ability to conduct daily life activities in the face of his claim of disabling pain."); *Walters*, 127 F.3d at 532 ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments."); *Id.* at 531 (discounting credibility appropriate where contradiction between testimony and other evidence); *Infantado*, 263 F. App'x at 475 (great weight accorded ALJ's assessment because he had opportunity to observe witness's demeanor).

20

In her Statement of Errors, Plaintiff first attacks the ALJ's reliance upon Plaintiff's activities of daily living, asserting that her ability to maintain personal care, prepare her own meals, clean her home, do laundry, mow grass, and manage her personal finances do not conflict with allegations of severe anxiety.  (Pl.'s Statement of Errors 14-15, ECF No. 14.)  Plaintiff suggests that the ALJ was required to explain how such activities are inconsistent with her complaints.  The Undersigned finds no err with the ALJ's consideration of Plaintiff's activities of daily living.  First, there exists no such heightened articulation requirement upon the ALJ to discuss every relevant factor and offer an explanation as to how a particular factor undermines or supports a claimant's allegations.  Second, in addition to the aforementioned activities, the record also reflects that the ALJ considered that during the relevant time period, Plaintiff drove, grocery shopped, attended church, volunteered at her church daycare, and babysat for her grandchildren.  Third, the ALJ did not rely upon Plaintiff's activities of daily living in isolation to evaluate her credibility, but instead considered her activities together with a number of other factors.  Finally, the Undersigned concludes that the ALJ reasonably concluded that her activities undermined the credibility of her allegations that she is unable to drive or to care for herself after a panic attack, sometimes for up to a week.  (R. at 35, 630-31.)

Plaintiff next attacks the ALJ's consideration of and reliance upon Plaintiff's treatment history, again suggesting that the ALJ was required to set forth the level of treatment necessary to be deemed disabled.  As set forth above, there is not heightened articulation standard that would require such a discussion.  Instead, the ALJ properly considered her treatment history together with several other factors in assessing her credibility.  Plaintiff's mostly-normal mental status examination findings, the absence of any hospitalizations or periods of decompensation,

21

her medications and their effectiveness, and that she opted not to attend scheduled therapy in order to babysit her grandchildren are all relevant considerations that the Undersigned finds the ALJ reasonably relied upon to discount Plaintiff's allegations of disabling mental impairments.

Finally, Plaintiff challenges the ALJ's reliance on her inconsistent statements concerning her babysitting activities and the frequency of her panic attacks.  With regard to the babysitting, the record reflects that Plaintiff told her treating physician that she could not attend group therapy because she "is baby sitting daily now."  (R. at 556.)  Then, at the hearing, Plaintiff testified that she goes to her grandchildren's home and plays with them while her daughter-in-law is there.  (R. at 33.)  Plaintiff asserts that she "is having difficulty understanding how this misunderstanding . . . works to negatively affect her credibility" given her clarification about what she meant by babysitting.  (Pl.'s Statement of Errors 15-16, ECF No. 14.)  What Plaintiff fails to understand is that the ALJ, who "had the opportunity to observe the witness's demeanor," *Infantado*, 263 F. App'x at 475, could have found her clarification not credible, especially in light of the traditional meaning of "babysitting," as well as Dr. Box's notation that the babysitting prevented Plaintiff from attending her therapy.  The ALJ likewise did not err in relying in part on the discrepancy in Plaintiff's allegations concerning the frequency of her panic attacks, especially given her testimony that she is able to function when she is not suffering the effects of a panic attack, (R. at 631).  As the ALJ pointed out, Plaintiff testified at the hearing that she experiences monthly panic attacks (R. at 35), but told her treating physician that she experiences panic attacks once every six weeks (R. at 538-41).

In sum, the Undersigned finds that the ALJ's assessment of Plaintiff's credibility was based on consideration of the entire record and is supported by substantial evidence.

Accordingly, applying the applicable deferential standard of review, the Undersigned concludes that the ALJ's credibility determination was not erroneous.  It is therefore **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED.**

**B.     The ALJ's Consideration and Analysis of the Opinion Evidence**

In her final, related contentions of error, Plaintiff challenges the ALJ's rejection of the limitations her treating physicians and the consulting examiner opined in favor of crediting opinions from state-agency physicians in arriving at his RFC determination.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  The determination of RFC is an issue reserved to the Commissioner.  20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding.  *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).  An ALJ is required to explain how the evidence supports the limitations that he or she set forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96–8p, 1996 WL 374184, at *6–7 (internal footnote omitted).

23

In considering a claimant's case and assessing the RFC, the ALJ must consider all medical opinions that he or she receives.  20 C.F.R. § 416.927(c).  The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."  20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ."  20 C.F.R. § 416.927(c)(2);  *Blakley v. Comm'r of Soc. Sec*., 581 F.3d 399, 408 (6th Cir. 2009).  If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight."  20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements.  *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*.  Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion."  20 C.F.R. § 416.927(c)(2).  Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted).  The Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied."  *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999).  The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.  *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45.  Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled."  *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision.  *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision); *Boseley v. Comm'r of Soc. Sec. Admin.*, 397 F. App'x 195, 199 (6th Cir. 2010) ("Neither the ALJ nor the Council is required to discuss each piece of data in its opinion, so long as they consider the evidence as a whole and reach a reasoned conclusion.")

25

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity.  20 C.F.R. § 404.1527(d).  Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance.  20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)

### 1.    The Opinions of Dr. Cowan

The ALJ considered Dr. Cowan's opinions, but assigned them "little weight," reasoning as follows:

> The opinion of Larry I. Cowan, D.O., the claimant's treating physician, is given little weight as his indication that the claimant is "disabled from working in almost any kind of situation that involves working with the public and/or any position requiring any significant cognitive abilities" does not mean that the claimant is complete[ly] precluded from obtaining any and all employment that exists in the national economy.  In addition, the severity of his assessed limitations are not supported by the treatment records and a determination of who is considered "disabled" is an area reserved for the commissioner.  His opinion rendered in February 2010 is given little weight as well, as it was prior to the claimant's alleged onset date.  Lastly, his other opinions are given little weight, as they are not supported with evidence from the record, his indication that the claimant would be unable to perform most positions is not tantamount to disability, and a determination of who is considered "disabled" is an area reserved for the commissioner.

(R. at 20 (internal citations to the record omitted).)

The Undersigned finds that the ALJ provided good reasons for according little weight to Dr. Cowan's opinions.  First, as the ALJ properly observed, the Commissioner reserves the power to decide certain issues, such as a claimant's RFC or whether a claimant is able to work.  20 C.F.R. § 404.1527(d); SSR 96–5p, 1996 WL 374183, at *5 (1996) ("Medical sources often offer opinions about whether an individual . . . is 'disabled' or 'unable to work[.]'  . . .  Because these are administrative findings that may determine whether an individual is disabled, they are

26

reserved to the Commissioner.").  Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to any particular weight or special significance.  20 C.F.R. § 404.1527(d); *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 505 (6th Cir. 2013); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

The ALJ also reasonably concluded that the severity of the assessed limitations are not supported by Dr. Cowan's treatment records or evidence from the record.  *See* 20 C.F.R. § 404.1527(c)(3) (identifying "supportability" as a relevant consideration).  Dr. Cowan's treatment notes consist primarily of notations of medication prescribed and diagnoses.  As set forth above, both the ALJ and the physicians upon whom he relied considered Plaintiff's medication history.  In addition, Dr. Cowan's listing of diagnoses do not require the conclusion that Plaintiff was disabled.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [the condition] . . . says nothing about the severity of the condition." (citation omitted)).  Dr. Cowan's opinions instead appear to be based upon Plaintiff's subjective complaints, which the ALJ found to be not credible.  *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 (6th Cir. 2009) ("Here, substantial evidence supports the ALJ's determination that the opinion of [the claimant's] treating physician was not entitled to deference because it was based on [the claimant's] subjective complaints, rather than objective medical data.").  And as discussed above, the objective findings during the time periods Dr. Cowan rendered his opinions reflected normal or only mild mental status examination findings.  (*See, e.g.*, R. at 435-36 (June 2010: euthymic, calm, and coopoerative mood and otherwise normal findings); R. at 423 (July 2010: mildly irritably, anxious, and depressed mood, but otherwise normal findings); R. at 426 (August 2010:

27

bright affect, somewhat anxious, and otherwise normal findings); R. at 429 (September 2010: mildly dysphoric and anxious mood with otherwise normal findings).)

Finally, the ALJ correctly observed that Dr. Cowan's most recent opinion, that Plaintiff is "disabled from working in almost any kind of situation that involves working with the public and/or any position requiring any significant cognitive abilities," (R. at 458), even if credited, does not require the conclusion that she is unable to perform any and all employment that exists in the national economy. Significantly, the RFC the ALJ assessed accommodates most of the concrete limitations Dr. Cowan opined in that it limits Plaintiff to understanding, remembering, and carrying out simple tasks and instructions, limits the length of time she needs to concentrate, and limits her contact with supervisors and coworkers to "casual and infrequent." (R. at 19.) The VE testified that an individual with these and several other additional limitations could perform approximately 13,000 light exertion, unskilled jobs in the state economy, such as a mail clerk, cleaner, or a marker. (R. at 638.)

In sum, the Undersigned finds that the ALJ did not err in his consideration and weighing of Dr. Cowan's opinions.

### 2.    The Opinion of Dr. Raiser

The ALJ considered Dr. Raiser's opinion, but assigned it "little weight," reasoning as follows:

> The opinion of Shelby K. Raiser, D.O., the claimant's treating physician, is given little weight, as she appeared to rely on the claimant's subjective complaints, this is not her area of speciality, and a determination of who is considered "disabled" is an area reserved for the commissioner. Additionally, the severity of her assessed limitations are not supported by the treatment records.

(R. at 19 (internal citations to the record omitted).)

28

The Undersigned finds that the ALJ provided good reasons for according little weight to Dr. Raiser's opinions.  In addition to again correctly pointing out that whether Plaintiff is disabled is an issue for the Commissioner, the ALJ reasonably found that her opinions of extreme limitations were not supported by the treatment records and were instead premised upon Plaintiff's subject reports, which the ALJ found to lack credibility.  Notably, Plaintiff has failed to identify any treatment notes which reflect objective findings that support her subjective reports and complaints.  Further, review of Dr. Raiser's treatment notes reflect that she documented only normal mental status examination findings and even noted that Plaintiff appeared "to be ok on medicines."  (R. at 569-571, 565-568.)  In light of the foregoing, the Undersigned concludes that the ALJ did not err in failing to credit Dr. Raiser's opinion.  *See Ferguson v. Comm'r of Soc. Sec.,* 628 F.3d 269, 273-74 (6th Cir. 2010) (ALJ did not err in rejecting medical opinion premised upon claimant's subjective complaints that were not supported by objective medical evidence); *Poe,* 342 F. App'x at 156 (same)*; Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (holding that physicians' opinions are not due much weight when premised upon on reports made by a patient that the ALJ found to be incredible).

The ALJ also properly considered that Dr. Raiser, unlike the physicians upon whose opinions he relied, is not a mental health expert.  *See* 20 C.F.R. § 416.927(c)(5) ("Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.")*.*

In sum, the Undersigned finds that the ALJ did not err in his consideration and weighing of Dr. Raiser's opinion.

### 3.  The Opinion of Dr. Miller

29

The ALJ considered Dr. Miller's opinion and assigned it "some weight," reasoning as follows:

> The opinion of Marc E. Miller, Ph.D., an independent psychological consultative examiner, is given some weight, as this as a one-time evaluation of the claimant's condition and part of his opinion is inconsistent with his examination. Specifically, his indication that the claimant has no impairment in her ability to understand, remember and carry out routine instructions and that she had moderate limitation in her ability to maintain attention span and concentration are consistent with the medical evidence of record; however, his conclusions that the claimant has marked impairment in social interactions and in dealing with stress and pressure in a work setting are not supported. While he noted that the claimant avoids people and has anxiety around others, he opined that her social adaptation was "fair," which is inconsistent with marked limitation in social interactions. Moreover, the only evidence of the claimant's stress tolerance are her subjective complaints regarding her prior employment.

(R. at 19 (internal citations to the record omitted).)

The Undersigned finds no error with the ALJ's consideration and weighing of Dr. Miller's opinion. Notably, the ALJ ultimately found Plaintiff to be more limited in some respects than Dr. Miller opined, specifically in regard to her ability to understand, remember, and carry out instructions in that the RFC the ALJ assessed limited Plaintiff to understanding, remembering, and carrying out simple tasks and instructions. (*Compare* R. at 449-53 (Dr. Miller's Opinion) *with* R. at 19 (ALJ's RFC finding).) In evaluating Dr. Miller's opinion, the ALJ reasonably considered that Plaintiff presented to Dr. Miller within the context of a one-time evaluation. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (opinion of consulting examiner "entitled to no special degree of deference" (citation omitted)). He also reasonably considered the fact that the only evidence Dr. Miller documented with regard to Plaintiff's stress tolerance were her subjective complaints. Consistent with the ALJ's conclusion, Dr. Miller's observations of Plaintiff included that she displayed cooperative, friendly behavior with good

eye contact and normal psychomotor responses, that her speech was intelligible and at a normal pace, and that her speech and receptive skills were good.  (R. at 450.)  In reaching his findings, however, Dr. Miller noted and relied, at least in part, upon Plaintiff's report that "she had to leave her job in May 2010, due to her panic disorder"; "complaints of agitation, irritability, and impatience with others"; her reports that she is "suspicious and mistrustful of others"; her belief that people stare at her; her reports of avoiding people and experiencing anxiety around people; and the fact that she "stays to herself in the home" to conclude that she had "marked impairment" in her ability to interact with others and deal with stress and pressure in a work setting.  (*See* R. at 449-54 ("Ability to interact with coworkers, supervisors and that public, indicate marked impairment *due to her panic disorder, anxiety, avoidance and irritability . . . . The ability to deal with stress and pressure in a work setting notes marked impairment, due to her anxiety, impatience, panic disorder and coping skills*." (emphasis added).)  Because the ALJ found Plaintiff's subjective reports to lack credibility, he reasonably discounted those aspects of Dr. Miller's opinion in which he relied in large part on Plaintiff's self-reports to arrive at his conclusions.  *See Ferguson*, 628 F.3d at 273–74, *Poe*, 342 F. App'x at 156; *Smith*, 482 F.3d at 877.

In sum, the Undersigned finds that the ALJ did not err in his consideration and weighing of Dr. Miller's opinion.

### 4.      The Opinions of Drs. Waggoner and Goldsmith

Plaintiff next challenges the ALJ's reliance upon the opinions of Drs. Waggoner and Goldsmith, the state-agency medical consultants.  The ALJ accorded their opinions "great weight," explaining as follows:

> The State Agency psychological consultants' mental assessments are given great weight, because although new medical evidence and opinions have been submitted since they rendered their opinions, the claimant's limitations have not changed based on the new evidence.

(R. at 20 (internal citations to the record omitted).) Plaintiff maintains that the ALJ erred in relying upon the opinions of Drs. Waggoner and Goldsmith because they did not have access to a large portion of the medical record when they rendered their opinions. Plaintiff also asserts that Drs. Waggoner and Goldsmith erroneously rejected Dr. Cowan's opinions concerning the severity of Plaintiff's stress tolerance. According to Plaintiff, Drs. Waggoner and Goldsmith "disagreed with the severity level [of Plaintiff's stress tolerance], not because the record did not support such a finding, but because it would have meant that she was disabled." (Pl.'s Statement of Errors 19, ECF No. 14.)

The Undersigned finds Plaintiff's first critique of the ALJ's reliance upon the opinions of Drs. Waggoner and Goldsmith unavailing. Social Security Ruling 96-6p, 1996 WL 374180 (July 2, 1996), states in pertinent part:

> In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources. For example, the opinion of the State agency medical or psychological consultant . . . .may be entitled to greater weight than a treating source's medical opinion if the State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source.

1996 WL 374180 at *3. This language does not, however, require the conclusion that a state-agency opinion cannot be credited if it is not based on a review of the entire record where the ALJ has considered the subsequent medical evidence. *See, e.g.*, *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (ALJ did not improperly rely upon state-agency

physicians' opinions where they were out of date where it was clear ALJ considered the medical examinations that occurred after the opinions were rendered and takes into account any changes); *Ruby v. Colvin*, No. 2:13–CV–01254, 2015 WL 1000672, at *4 (S.D. Ohio Mar. 5, 2015) ("[S]o long as an ALJ considers additional evidence occurring after a state agency physician's opinion, he has not abused his discretion."); *cf. Hess v. Colvin*, No. 3:14-cv-401, 2015 WL 8381448, at *3 (S.D. Ohio Dec. 10, 2015) (noting that Social Security Ruling 96-6p "does not say that a nontreating or nonexamining medical source's opinions are given more weight only when they review a more complete record than the record before the treating source" and stating that instead, "the completeness of the record is one of many factors used to weigh state-agency source's opinions").

Here, the ALJ acknowledged that additional evidence was added to the record after the state-agency physicians rendered their opinions, but concluded that the additional evidence did not reflect a change in Plaintiff's limitations.  (R. at 20.)  Despite Plaintiff's protests, she fails to identify any treatment notes or objective findings reflecting that her condition had significantly worsened or that she had experienced any episodes of decompensation subsequent to when Drs. Waggoner and Goldsmith rendered their opinions.  The Undersigned finds that substantial evidence supports the ALJ's determination that the record does not reflect deterioration in Plaintiff's condition.  For example, evidence generated subsequent to when Drs. Waggoner and Goldsmith rendered their opinions reflects that Plaintiff was repeatedly found to have normal mental status examinations (R. at 568, 571); she was observed "to be okay on medications," (R. at 571); Dr. Box observed that Plaintiff had "made major progress in the past two years," (R. at 538-41); Plaintiff reported attending church and volunteering at the church daycare (*Id*); Plaintiff

reported that she was babysitting daily and no longer attending group therapy (R. at 556); and Dr. Box was tapering Plaintiff's medications (R. at 552).

The Undersigned finds that Plaintiff's second critique, that the Drs. Waggoner and Goldsmith erred in arriving at their opinions based upon a statement they made concerning Dr. Cowan's opinion, is equally unavailing. According to Plaintiff, the ALJ's statement that the medical evidence supports a finding of stress tolerance problems, but does not require a limitation so severe as an environment that this not stressful at all (as Dr. Cowan had opined) given that elimination of stress is impossible (*See* R. at 43-44), means that the ALJ disagreed with Dr. Cowan because to agree would have required a finding of disabled. (Pl.'s Statement of Errors 19, ECF No. 14.) Review of the opinions of Drs. Waggoner and Goldsmith in their entirety, however, reveals that in assessing the credibility of Plaintiff's allegations and her limitations, they reviewed the medical evidence and were most persuaded by Plaintiff's "[m]edication [t]reatment," her "[t]reatment other than medication," and the mental status examination findings. (R. at 39-45; 63-72.) Indeed, they specifically noted specific aspects of multiple mental status examination findings. Based upon this information, they concluded that Plaintiff had reduced stress tolerance due to issues related to her anxiety, but that she was still capable of performing low stress jobs in a stable environment that involves minimal social interactions and infrequent change. Read in context, then, it is clear that Drs. Waggoner and Goldsmith agreed with Dr. Cowan that Plaintiff had stress tolerance issues, but found the language Dr. Cowan employed to describe the limitation too severe. Moreover, Dr. Goldsmith also stated that "Dr. Cowan's statements cannot be given weight, as they are not supported by objective medical evidence in the file" (R. at 70), which clearly demonstrates that contrary to

Plaintiff's assertions, Dr. Goldsmith did not reject Dr. Cowan's opinion because it would have resulted in a finding of disability.

In sum, the Undersigned finds that the ALJ did not abuse his discretion in relying upon the opinions of Drs. Waggoner and Goldsmith.

## VII.  DISPOSITION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, he may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district

court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to

magistrate judge's report and recommendation).  Even when timely objections are filed,

appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d

981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to

specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation

omitted)).


Date: July 28, 2016                              _____/s/ *Elizabeth A. Preston Deavers*_____
                                                 ELIZABETH A. PRESTON DEAVERS
                                                 UNITED STATES MAGISTRATE JUDGE

36

37